JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Gina M. Wofford

**DEFENDANTS**

Equifax Informayion Services, LLC

**(b)** County of Residence of First Listed Plaintiff   County of Clark
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(EXCEPT IN U.S. PLAINTIFF CASES)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND
INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Miles N. Clark, Esq., Matthew I. Knepper, Esq., KNEPPER & CLARK LLC, 10040 W. Cheyenne Ave., Las Vegas, NV 702-825-6060.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☒ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1  Original
Proceeding

☐ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
another district
(specify)

☐ 6  Multidistrict
Litigation

☐ 7  Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 USC § 1681

Brief description of cause: violations of the Fair Credit Reporting Act

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $   CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE ____   DOCKET NUMBER ____

DATE
January 16, 2017

SIGNATURE OF ATTORNEY OF RECORD
/s/David H. Krieger, Esq.

**FOR OFFICE USE ONLY**

RECEIPT # ____   AMOUNT ____   APPLYING IFP ____   JUDGE ____   MAG. JUDG ____

David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
FAX: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Gina M. Wofford, | : Civil Action No.: |
| | : |
| Plaintiff, | : |
| v. | : **COMPLAINT FOR DAMAGES** |
| | : **PURSUANT TO THE FAIR CREDIT** |
| Equifax Information Services, LLC; PHH | : **REPORTING ACT, 15 U.S.C. § 1681, ET** |
| Mortgage Corporation a/k/a Mortgage Service | : **SEQ.** |
| Center – PHH; Silver State Schools Credit | : |
| Union; and Trans Union LLC, | : **JURY TRIAL DEMANDED** |
| | : |
| Defendants. | : |
| | : |

### INTRODUCTION

1.    The United States Congress has found the banking system is dependent upon fair and

accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the

banking system, and unfair credit reporting methods undermine the public confidence,

which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2.     The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

3.     Gina M. Wofford ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of Equifax Information Services, LLC ("Equifax"), PHH Mortgage Corporation a/k/a Mortgage Service Center – PHH ("MSC"), Silver State Schools Credit Union ("SSSCU"), and Trans Union LLC ("Trans Union") (or jointly as "Defendants") with regard to erroneously reporting derogatory credit information to national reporting agencies.

4.      Defendants failed to properly investigate Plaintiff's disputes, damaging Plaintiff's creditworthiness.

**JURISDICTION AND VENUE**

5.      This Court has federal question jurisdiction because this case arises out of violation of federal law. 15 U.S.C. §1681 *et seq.*; 28 U.S.C. §1331; *Smith v. Community Lending, Inc.*, 773 F.Supp.2d 941, 946 (D. Nev. 2011).

6.      This action arises out of each Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(x) ("FCRA").

7.      Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Clark County, the State of Nevada and because Defendants are subject to personal jurisdiction in the County of Clark, State of Nevada as they conduct business there. Venue is also proper because, the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2).

8.      Further, Equifax and Trans Union have registered agents of service in Nevada and are listed with the Nevada Secretary of State as foreign limited liability companies doing business in Nevada.

**PARTIES**

9.      Plaintiff is a natural person residing in the County of Clark, State of Nevada. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

10.     Defendant MSC is a corporation doing business in the State of Nevada, and is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

11.     Defendant SSSCU is a corporation doing business in the State of Nevada, and is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in

the ordinary course of business furnishes information to a consumer credit reporting agency.

12.   Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports.  Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), doing business with its principal place of business in Georgia.

13.   Defendant Trans Union regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports.  Trans Union is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), doing business with its principal place of business in Illinois.

14.   Unless otherwise indicated, the use of Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants' named.

### GENERAL ALLEGATIONS

15.   On or about 7/31/2009, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Nevada pursuant to 11 U.S.C. §1301 *et seq*. Plaintiff's case was assigned Case Number 09-23907-btb (the "Chapter 13" or "Bankruptcy").

16.   The obligations ("Debt") to each Defendant herein (as applicable) were scheduled in the Bankruptcy and each respective creditor-Defendant, or its predecessor in interest, received notice of the Bankruptcy.

17.    On 4/09/2010, the Plaintiff's Chapter 13 Plan was confirmed (the "Confirmed Chapter 13 Plan" or "Confirmation Order").

18.    A confirmed plan constitutes a new contract between the debtor and creditors and a creditor's rights are defined by the confirmed plan. Consequently, a pre-petition claim provided for in a confirmed plan is no longer a pre-petition claim. The claim is a right to payment arising from the confirmed plan. *Padilla v. Wells Fargo Home Mortg., Inc. (In re Padilla)*, 379 B.R. 643, 649, 2007 Bankr. LEXIS 2655, *1 (Bankr. S.D. Tex. 2007).

19.    Plaintiff ultimately made all payments required under the terms of the Confirmed Chapter 13 plan.

20.    None of the Defendants named herein obtained relief from the "automatic stay" codified at 11 U.S.C. §362 *et seq.* while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff for any *personal* liability.

21.    Accordingly, the debts to each Defendant named herein (as applicable) were discharged through the Bankruptcy on 6/15/2015.

22.    However, Defendants named herein, and each of them, either reported or caused to be reported inaccurate information after the Bankruptcy as discussed herein.

23.    Defendant's reporting post-Bankruptcy derogatory information was inaccurate and misleading in that each Defendant continued reporting information based on each respective Defendant's pre-bankruptcy contract terms with the Plaintiff, which were no longer enforceable upon the bankruptcy filing, thereby rendering the disputed information "inaccurate".

24.    The adverse information reported by Defendants was based on each respective Defendant's improper enforcement and reporting of pre-bankruptcy obligations, where

such reporting failed to comply with the payment structure set forth in the Plaintiff's Chapter 13 Plan. Failing to report consistent with the terms of the Chapter 13 plan was therefore inaccurate, since all the Plaintiff's pre-bankruptcy creditors (whether eventually discharged or not) were subject to repayment pursuant to the Chapter 13 plan terms while the Bankruptcy was pending.

25.    Additionally, Defendant's inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards, which provides guidance for credit reporting and FCRA compliance.

26.    The Consumer Data Industry Association ("CDIA") publishes the Metro 2 ("Metro 2") reporting standards to assist furnishers with their compliance requirements under the FCRA.

27.    Courts rely on such guidance to determine furnisher liability. *See e.g. In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit reporting agency with the notation `Discharged in bankruptcy' and with a zero balance due").

28.    On information and belief, Defendants herein adopted and at all times relevant implemented the Metro 2 format.

29.    On information and belief, each furnisher-Defendant named herein adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of their respective duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

30.    The Metro 2 format guidelines for credit reporting are nearly identical for reports made during the "Month BK Filed," "Months Between Petition Filed and BK Resolution," and

after "Plan Completed" for Chapter 13 Debtors and furnishers who choose to report post-bankruptcy credit information to CRAs.  *See e.g.*, 2015 CDIA Credit Reporting Resource Guide ("2015 Metro 2"), Frequently Asked Question 28(a), at pages 6-21 – 6-22.

31.    Thus, many of the consumer reporting fields should be reported the same way both during and after a bankruptcy proceeding, *id*., with the following relevant exceptions:

    a.    <u>Current Balance</u>

        i.    For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the outstanding balance amount.  *Id*.

        ii.    However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "Chapter 13 plan balance, which should decline as payments are made."  *Id*. at 6-22.

        iii.    And, for Current Balance reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "Zero."  *Id*.

    b.    <u>Scheduled Monthly Payment Amount</u>:

        i.    For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the "contractual monthly payment amount."  *Id*. at 6-21.

        ii.    However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "Chapter 13 Payment Amount."  *Id*. at 6-22.

        iii.    And, for Scheduled Monthly Payment Amount reporting when "Plan Completed – All payments made according to plan – no further

obligation," Metro 2 instructs the furnisher to report a current balance of "Zero."  *Id.*

32.    Despite Metro 2 Format's instructions, each furnisher-Defendant named herein failed to conform to the Metro 2 Format when reporting on Plaintiff's accounts after the Plaintiff filed Bankruptcy as further set forth below.

33.    In turn, each of the credit reporting agencies named herein, rereported the inaccurate information, thus violating their duty to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b) when preparing a consumer report.

34.    To this end, the adverse reporting on the Plaintiff's consumer report departed from the credit industry's own reporting standards and was not only inaccurate, but also materially misleading under the CDIA's standards as well.

35.    A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about otherwise may be factually accurate data.  *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

36.    Additionally, Reporting and rereporting inaccurate and/or misleading statements also violates 15 U.S.C. § 1681g(a) because the lack of clarity in the information reported and rereported has the tendency to confuse ordinary consumers like Plaintiff.

## THE EQUIFAX VIOLATIONS

## MSC Misreported Credit Information

## RE: Account No. 9544003375XXXX*

37.    In an Equifax credit report dated February 2, 2016, MSC inaccurately reported that the Plaintiff was still making an "actual payment amount" of $1,805 even though MSC's

debt was discharged in the Bankruptcy.  It was therefore inaccurate and misleading for MSC to report any payment amount greater than $0.

38. Further, MSC inaccurately reported that the Plaintiff's date of first major delinquency ("First Major Delinquency") occurred in December 2014, when the Plaintiff filed Bankruptcy on 7/31/2009.  The First Major Delinquency date should have been no later than the Bankruptcy filing date. By reporting a First Major Delinquency later than the Bankruptcy filing date MSC caused the First Major Delinquency to remain on the Plaintiff's credit reported longer than allowed under the FCRA's obsolescence period codified at 15 U.S.C. § 1681c(a).  MSC's "re-aging" of its debt is illegally causing the trade line to remain on the Plaintiff's credit report longer than legally permissible.

39. On or about April 11, 2016, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed MSC's reported information regarding its reported obligation by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by MSC.

40. Specifically, Plaintiff sent a letter to Equifax (the "Equifax Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted.

41. Upon information and belief, upon receiving the Equifax Dispute Letter, Equifax timely notified MSC of the dispute based on its mandated statutory duty pursuant to 15 U.S.C. § 1681i.

42. Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

43. On or about May 7, 2016, Plaintiff received notification from Equifax through its "reinvestigation" (Equifax Confirmation # 6110044293) ("Equifax Reinvestigation") that

MSC and Equifax received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6).

44.    A reasonable investigation by these Defendants would have indicated that Plaintiff filed for Chapter 13 bankruptcy and made all required Chapter 13 plan payments, since Plaintiff obtained a discharge.

45.    MSC and Equifax failed to conduct a reasonable investigation as required by 15 U.S.C. §§ 1681s-2(b)(1)(A) and/or 1681i(a), and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

46.    MSC and Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. §§ 1681s-2(b)(1)(B) and 1681i(a), respectively.

47.    MSC and Equifax re-reported the inaccurate derogatory information on Plaintiff's report. Specifically, MSC and Equifax still reported an "Actual Payment Amount" of $1,805, and added a "Scheduled Payment Amount" of $1,805.  Additionally, MSC and Equifax continued to report the First Major Delinquency date of 12/2014.

48.    MSC and Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.S.C. §§ 1681s-2(b)(1)(B) and/or 1681i(a), respectively.

49.    Due to MSC and Equifax's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. §§ 1681-s(2)(b)(1)(C) and/or 1681e(b), respectively.

50.     Plaintiff's Equifax Dispute Letter also included a statement of dispute as that term is meant pursuant to 15 U.S.C. § 1681i(b). Specifically, the Plaintiff requested that in the event Equifax failed to make the requested corrections identified in the Plaintiff's Equifax Dispute Letter that Equifax include a statement on the Plaintiff's credit report stating that the instant account was disputed. However, Equifax failed to provide such a statement and thereby breached its statutory obligations under 15 U.S.C. § 1681i(b).

51.     Upon information and belief, Equifax also failed in Plaintiff's subsequent consumer reports containing the above disputed information to clearly note that this account was disputed by the Plaintiff and provide either the Plaintiff's dispute statement or a clear and accurate codification or summary of the dispute in violation of Equifax's statutory obligations under 15 U.S.C. § 1681i(c).

52.     Reporting and rereporting the above-referenced derogatory information also constituted a violation of 15 U.S.C. § 1681g(a) because the lack of clarity in the information reported and rereported has the tendency to confuse ordinary consumers like Plaintiff.

53.     Plaintiff's continued efforts to correct MSC and Equifax's erroneous and negative reporting of the discharged debt by communicating Plaintiff's dispute with MSC and Equifax were fruitless.

54.     MSC and Equifax's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful.  Plaintiff is, accordingly, eligible for statutory damages.

55.     Also as a result of MSC and Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation credit denials, fear of

credit denials, out-of-pocket expenses in challenging the Defendants' wrongful representations, damage to his creditworthiness, and emotional distress.

56. By inaccurately reporting account information relating to the discharged debt after notice and confirmation of its errors, MSC and Equifax failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and/or (E), 1681i(a) and 1681e(b), respectively.

## SSSCU Misreported Credit Information

## RE: Account Nos. 1132*

57. In an Equifax credit report dated February 2, 2016, SSCU reported four accounts, all bearing the account number "1132*". The first account, purportedly opened 9/15/2009, did not list a high credit limit (the "Unlisted Account"). The second account, purportedly opened 11/9/2006, listed a high credit of $11,798 ("$11,798 Account"). The third account, purportedly opened 1/9/2003, listed a high credit of $14,179 (the "$14,179 Account"). The fourth account, purportedly opened 6/19/2003, listed a high credit of $21,374 (the "$21,374 Account").

58. On the Unlisted Account, SSSCU inaccurately reported a date of first delinquency on 11/2012 ("First Delinquency") and a date of first major delinquency on 02/2013 ("First Major Delinquency") (collectively, "DLA"). Neither the First Delinquency nor the First Major Delinquency date should have been later than the Bankruptcy filing date. By reporting a DLA later than the Bankruptcy filing date SSSCU caused the DLA to remain on the Plaintiff's credit reported longer than allowed under the FCRA's obsolescence period codified at 15 U.S.C. § 1681c(a). SSSCU's "re-aging" of its debt is illegally causing the trade line to remain on the Plaintiff's credit report longer than legally permissible.

59.     On the $11,798 Account, SSSCU listed a "date of last payment on 11/2012."  By reporting a "date of last payment" later than the Bankruptcy filing date SSSCU caused the DLA to remain on the Plaintiff's credit reported longer than allowed under the FCRA's obsolescence period codified at 15 U.S.C. § 1681c(a).  SSSCU's "re-aging" of its debt is illegally causing the trade line to remain on the Plaintiff's credit report longer than legally permissible.  Additionally, the $11,798 Account listed a "scheduled payment amount" of $203.  This was misleading, as it tended to suggest that Plaintiff was still obligated to pay the amounts due, even though Plaintiff's obligation to pay on the $11,798 Account had ceased as a result of Plaintiff's Chapter 13 bankruptcy.

60.     In the Equifax Dispute Letter, and again pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed SSSCU's reported information regarding its reported obligation by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by SSSCU on accounts ending in 1132*.  In the Equifax Dispute Letter, Plaintiff requested that inaccurate and derogatory information be removed, corrected or deleted.

61.     By referencing the common identifier "1132*", plaintiff gave reasonable notice to Equifax and SSSCU of its duty to investigate each of the four SSSCU accounts listed above.

62.     Upon information and belief, upon receiving the Equifax Dispute Letter, Equifax timely notified SSSCU of the dispute based on its mandated statutory duty pursuant to 15 U.S.C. § 1681i.

63.     Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

64.     On or about May 7, 2016, Plaintiff received notification from Equifax through the Equifax Reinvestigation that SSSCU and Equifax received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6).

65.     A reasonable investigation by these Defendants would have indicated that Plaintiff filed for Chapter 13 bankruptcy and made all required Chapter 13 plan payments, since Plaintiff obtained a discharge.

66.      SSSCU and Equifax failed to conduct a reasonable investigation as required by 15 U.S.C. §§ 1681s-2(b)(1)(A) and/or 1681i(a), and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

67.     SSSCU and Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. §§ 1681s-2(b)(1)(B) and 1681i(a), respectively.

68.     On information and belief, SSSCU and Equifax re-reported the inaccurate derogatory and misleading information on Plaintiff's report.

69.     In its Reinvestigation, Equifax listed four separate SSSCU accounts.  However, it is unclear which of the four accounts was actually reinvestigated.

70.     SSSCU first referenced the $11,798 Account in three separate entries.  For the first and second entries, Equifax stated that "this item has been deleted from the credit file."  The tradeline data appearing below these purported "deletions" was identical to how it appeared on the Equifax Credit Report, with the exception that "additional information" that the account was included in "Bankruptcy Chapter 13," and the "date opened" was changed from 11/09/2006 to 11/01/2006.  Equifax and SSSCU continued to report a "date of last payment of 11/2012, and a "scheduled payment amount" of $203.

14

71.     Equifax also referenced the $11,798 Account in the third entry.  In apparent contradiction to the first two entries, Equifax now stated that "This account has been updated to show included in bankruptcy/include in bankruptcy of another person."  Equifax also stated that "Additional information has been provided from the original source regarding this item."  However, the third entry was identical to how it appeared on the Equifax Credit Report, with the exception that "additional information" that the account was included in "Bankruptcy Chapter 13," and the "date opened" was changed from 11/09/2006 to 11/01/2006.  Equifax and SSSCU continued to report a "date of last payment of 11/2012, and a "scheduled payment amount" of $203.

72.     Despite the patent contradiction between Equifax's apparent two decisions to "delete" and "update" the $11,798 Account, Equifax stated that "If you have additional questions about this item please contact" SSSCU.

73.     On the fourth entry, Equifax listed an account which on information and belief was the Unlisted Account.  Equifax stated that "The last payment date has been added/updated. The date of last activity has been updated.  Additional information has been provided from the original source regarding this item."  However, the Unlisted Account continued to list the First Major Delinquency as occurring in February 2013.

74.     SSSCU and Equifax failed to investigate the $14,179 Account or the $21,374 Account, despite being placed on reasonable notice that Plaintiff requested the same by referencing the 1132* account in her Equifax Dispute Letter.

75.     SSSCU and Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.S.C. §§ 1681s-2(b)(1)(B) and/or 1681i(a), respectively.

76.     Due to SSSCU's and Equifax's failure to reasonably investigate Plaintiff's dispute, they

each further failed to correct and update Plaintiff's information as required by 15 U.S.C.

§ 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in

violation of 15 U.S.C. §§ 1681-s(2)(b)(1)(C) and/or 1681e(b), respectively.

77.     Plaintiff's Equifax Dispute Letter also included a statement of dispute as that term is

meant pursuant to 15 U.S.C. § 1681i(b). Specifically, the Plaintiff requested that in the

event Equifax failed to make the requested corrections identified in the Plaintiff's

Equifax Dispute Letter that Equifax include a statement on the Plaintiff's credit report

stating that the instant account was disputed. However, Equifax failed to provide such a

statement and thereby breached its statutory obligations under 15 U.S.C. § 1681i(b).

78.     Upon information and belief, Equifax also failed in Plaintiff's subsequent consumer

reports containing the above disputed information to clearly note that this account was

disputed by the Plaintiff and provide either the Plaintiff's dispute statement or a clear and

accurate codification or summary of the dispute in violation of Equifax's statutory

obligations under 15 U.S.C. § 1681i(c).

79.     Reporting and rereporting the above-referenced derogatory and misleading information

also constituted a violation of 15 U.S.C. § 1681g(a) because the lack of clarity in the

information reported and rereported has the tendency to confuse ordinary consumers like

Plaintiff.

80.     Additionally, reporting and rereporting Plaintiff's SSSCU account numbers with the

common identifier "1132*," also caused the disclosure of information that would confuse

an ordinary consumer under 15 U.S.C. § 1681g(a), because these common identifiers

made it practically impossible for Plaintiff to ascertain which changes Equifax and SSSCU had been made to which disputed accounts.

81.    Further, the Equifax Reinvestigation listed the $11,798 Account on three separate occasions, and indicated that the account had been both "deleted" and "updated". These contradictory statements left Plaintiff to guess as to what course of action Equifax had actually decided to take, and violated 15 U.S.C. § 1681g(a) because the statements have the tendency to confuse ordinary consumers like Plaintiff.

82.    Plaintiff's continued efforts to correct SSSCU's and Equifax's erroneous and negative reporting of the discharged debt by communicating Plaintiff's dispute with SSSCU and Equifax were fruitless.

83.    SSSCU's and Equifax's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

84.    Also as a result of SSSCU's and Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation credit denials, fear of credit denials, out-of-pocket expenses in challenging the Defendants' wrongful representations, damage to his creditworthiness, and emotional distress.

85.    By inaccurately reporting account information relating to the discharged debt after notice and confirmation of its errors, SSSCU and Equifax failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and/or (E), 1681i(a) and 1681e(b), respectively.

## THE TRANS UNION VIOLATIONS

### Trans Union Failed to Reinvestigate or Notify Chase Bank USA, NA of Plaintiff's Dispute

86.    A February 3, 2016 Trans Union Credit Report  ("Trans Union Credit Report") listed an account from Chase Bank USA, NA ("Chase"), Account No. 45595050XXXX ("Chase Account").  This account, which had been included in Plaintiff's bankruptcy, contained certain derogatory information.  Specifically, Equifax and Chase reported a "status" of "Account 30 Days Past Due Date", even though Plaintiff's obligation to Chase had been discharged in her Chapter 13 bankruptcy.

87.    The Trans Union Credit Report also included an account from Wells Fargo DLRSVC/WACHO, Account No. 51888089XXXX ("Wells Fargo Account"), for which Plaintiff believed contained derogatory information.

88.    On or about April 11, 2016, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed Chase's reported information regarding its reported obligation by notifying Trans Union, in writing, of the incorrect and inaccurate credit information furnished by Chase. Specifically, Plaintiff sent a letter to Trans Union (the "Trans Union Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted.  In this letter, Plaintiff also disputed information contained on the Wells Fargo Account.

89.    Trans Union, upon receipt of Plaintiff's dispute, was required to conduct a reinvestigation into the Chase Account pursuant to 15 U.S.C. § 1681i.

90.    On May 6, 2016, Trans Union notified Plaintiff of the results of its reinvestigation, Report No. 360827670 ("Trans Union Reinvestigation").

91.   Although Trans Union indicated that the Wells Fargo Account had been "deleted," the Trans Union Reinvestigation failed to mention the Chase Account at all, nor list any actions Trans Union had taken to reinvestigate the Chase Account.  Thus, Plaintiff has no grounds to believe that Trans Union actually took any steps it was obligated to take to reinvestigate the Chase Account.  Similarly, Plaintiff has no grounds to believe that Trans Union unilaterally deleted the information on her Chase Account under 15 U.S.C. § 1681i(a)(5), or found her dispute to be frivolous under 15 U.S.C. § 1681i(a)(3).

92.   Because Trans Union failed to reinvestigate Plaintiff's dispute into her Chase Account by notifying Chase under 15 U.S.C. § 1681(a)(2), Trans Union failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

93.   Trans Union's failure to reinvestigate and notify Plaintiff of the results of that reinvestigation, as outlined above, violated 15 U.S.C. § 1681i(a)(2).

94.   By inaccurately reporting account information relating to the discharged debt after notice and confirmation of its errors, Trans Union failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(E).

95.   Trans Union's failure also evinced a failure to follow reasonable procedures to ensure maximum possible accuracy, as required under 15 U.S.C. § 1681e(b).

96.   Reporting and rereporting the above-referenced derogatory information also constituted a violation of 15 U.S.C. § 1681g(a) because the lack of clarity in the information reported and rereported has the tendency to confuse ordinary consumers like Plaintiff.

19

97.     Trans Union's failures, in light of its knowledge of the actual error, were willful. Plaintiff is, accordingly, eligible for statutory damages.

98.     As a result of Trans Union's failure to conduct a reasonable reinvestigation or follow reasonable procedures, Plaintiff has suffered actual damages, including without limitation out-of-pocket expenses.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681 *ET SEQ.* (FCRA)**

99.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

100.    The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. §1681.

101.    As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

102.    As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681 ET SEQ. (FCRA)**

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

**TRIAL BY JURY**

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: January 16, 2017

Respectfully submitted,

/s/ Miles N. Clark, Esq.
Matthew I. Knepper, Esq.
Miles N. Clark, Esq.
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129

David H. Krieger, Esq.
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123

Attorneys for Plaintiff